IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| THE EMPLOYEE BENEFITS ADMINISTRATION COMMITTEE FOR AND ON BEHALF OF THE NORTHWESTERN ENERGY FLEXIBLE COMPENSATION PLAN AND ITS COMPONENT PLAN THE HEALTH BENEFIT PLAN FOR ALL ACTIVE EMPLOYEES OF NORTHWESTERN CORPORATION dba NORTHWESTERN ENERGY,<br><br>Plaintiff,<br><br>v.<br><br>ALASKACARE RETIREE HEALTH PLAN,<br><br>Defendant. | Case No. 21-cv-4119<br><br>**COMPLAINT** |

Plaintiff the Employee Benefits Administration Committee for and on behalf of the NorthWestern Energy Flexible Compensation Plan and its component plan the Health Benefit Plan for All Active Employees of NorthWestern Corporation dba NorthWestern Energy (all together, the "Plaintiff"), for its Complaint against Defendant AlaskaCare Retiree Health Plan (the "AlaskaCare Plan" or "Defendant") states as follows:

## NATURE OF THE ACTION

1. This case involves a coordination of benefits dispute between an ERISA plan (Plaintiff) and a non-ERISA plan (Defendant). Both plans provide coverage for the same medical expenses incurred by a particular claimant (the "Claimant"), yet each plan contends its own obligation to reimburse or pay for those expenses is secondary while the other plan's obligation is primary. Meanwhile, the medical expenses of the Claimant remain unpaid, as neither plan views itself as primary and each plan expects the other to pay.

2. Plaintiff, as the ERISA plan, seeks a declaration and equitable relief under ERISA recognizing that Defendant's obligation to pay for the Claimant's unpaid medical expenses is primary, while Plaintiff's obligation is secondary.

3. This result is driven by the language of the coordination of benefits provisions in the respective plans, the federal Medicare Secondary Payer rules, and the federal common law doctrine that, to the extent there is any conflict between two plans' coordination of benefits clauses, the terms of the ERISA plan, including its coordination of benefits clause, control and must be given full effect over the terms of the non-ERISA plan.

## THE PARTIES

4. The NorthWestern Energy Flexible Compensation Plan ("Flexible Compensation Plan") has component plans, one of which is the Health Benefit Plan for All Active Employees of NorthWestern Corporation dba NorthWestern Energy (the "Active Plan") (together, the Flexible Compensation Plan and the Active Plan are referred to as the "NorthWestern Plan").

5. The NorthWestern Plan is an employee welfare benefit plan, as defined in the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §1000, *et seq*; *see* 29 U.S.C. §1002(1). As an ERISA plan, the NorthWestern Plan is an entity that may sue or be sued under Title I of ERISA, as authorized in 29 U.S.C. §1132(d)(1).

6. The NorthWestern Plan provides health and welfare benefits, including medical and hospital benefits, to eligible employees of the plan sponsor, NorthWestern Corporation dba NorthWestern Energy (the "Company"), and their dependents, including participants and dependents who reside in the State of South Dakota, in accordance with the terms and conditions contained in the governing plan documents.

7.  Pursuant to a delegation from the Company's board of directors, the Employee Benefits Administration Committee ("EBAC") of the Company is the named fiduciary and administrator of the NorthWestern Plan.

8.  The EBAC brings this suit in its representative capacity for and on behalf of the NorthWestern Plan, as authorized by ERISA. *See, e.g.*, 29 U.S.C. §1132(a)(3).

9.  Defendant AlaskaCare Plan is a health plan established and sponsored by the State of Alaska, Division of Retirement and Benefits. The AlaskaCare Plan provides medical and hospital benefits to eligible retirees of the State of Alaska and their dependents.

10. Because it is established or maintained by a state government, the AlaskaCare Plan is a governmental plan that is not governed by ERISA.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because Plaintiff brings this action under ERISA and federal common law seeking a declaration under 28 U.S.C. §2201(a) that, among other things, the NorthWestern Plan is not primarily liable to pay for the medical expenses of the Claimant and that the Defendant is liable to pay the Claimant's unpaid past and future medical expenses, to the extent otherwise covered by both plans.

12. This Court also has jurisdiction under 28 U.S.C. § 1331 because Plaintiff seeks equitable relief under federal law, 29 U.S.C. §1132(a)(3), to enforce, among other things, the NorthWestern Plan's coordination of benefits provisions in its governing plan document.

13. This Court has personal jurisdiction over the AlaskaCare Plan under ERISA's nationwide service of process provision, 29 U.S.C. §1132(e)(2). The AlaskaCare Plan (like its sponsor, the State of Alaska) is based in the United States and thus, under ERISA, is subject to nationwide service of process and personal jurisdiction in this district. Also, upon information

and belief, the AlaskaCare Plan is a nationwide plan in that it pays various covered costs incurred by participants and beneficiaries anywhere within the contiguous limits of the United States, Alaska and Hawaii. Thus Defendant could reasonably expect a coordination of benefits dispute to arise anywhere in the United States.

14. Venue is proper in this Court under ERISA's venue provision, 29 U.S.C. §1132(e)(2), because, among other things, the NorthWestern Plan is administered in Sioux Falls, South Dakota, or, alternatively, it is administered in both Sioux Falls and in Montana, with Sioux Falls being the place where primary management, direction and decision-making for the NorthWestern Plan occurs. Three of the six EBAC members, including the chair, work in Sioux Falls at the Company's principal place of business. The other three members of the EBAC work in Montana. The EBAC's meetings are usually conducted electronically, rather than in person. In performing its duties, the EBAC relies on operational support from personnel in the Company's benefits department, which is led by an executive in Sioux Falls who oversees the work of employees who are largely located in Montana. The NorthWestern Plan's records are primarily kept on servers that are equally accessible by authorized personnel in both South Dakota and Montana. With the leadership of the EBAC and the leadership of the benefits support staff both being located at the Company's principal place of business in Sioux Falls, the management and direction of the NorthWestern Plan primarily occurs in this district. Additionally, to the extent relevant here, the governing plan document for the NorthWestern Plan provides that any action at law or equity brought to recover on the NorthWestern Plan "must be filed only in federal court in Sioux Falls, South Dakota." (Ex. A, page 105.) Nothing in ERISA prohibits a plan from being administered in more than one district for purposes of determining

4

venue, and if the NorthWestern Plan were found to be administered in two districts, those would be the District of South Dakota and the District of Montana.

## FACTS

### The NorthWestern Plan

15. The NorthWestern Plan is self-funded by the Company.

16. The Company is a Delaware corporation with its principal place of business in Sioux Falls, South Dakota.

17. True and correct copies of the NorthWestern Plan's 2020 restatement of its Summary Plan Description for the Active Plan, all amendments that have been adopted since the restatement, and a finalized Summary of Material Modifications (altogether, the "SPD") are attached as Exhibit A. The SPD serves as the governing plan document for the Active Plan component of the NorthWestern Plan.

18. The NorthWestern Plan is administered as described in paragraph 14 above.

### Overlapping Coverage of the Claimant's Medical Claims

19. The Claimant was employed by the State of Alaska and is now retired.

20. The Claimant's spouse is an active employee of the Company.

21. The Claimant's initials are D.K.F. Defendant is well aware of the identity of the Claimant, as the parties have attempted in vain to resolve this particular dispute before litigation commenced.

22. The Claimant has incurred medical expenses in various states, including Montana, Minnesota, and Arizona, which expenses are covered (before factoring in any prioritization or coordination of benefits rules and provisions) by the AlaskaCare Plan, the NorthWestern Plan, and Medicare.

23. The Claimant is covered under the AlaskaCare Plan as a retiree from employment with the State of Alaska.

24. The Claimant is covered under the NorthWestern Plan as a dependent of an active employee of the Company.

25. The Claimant is covered by Medicare due to age.

**Coordination of Benefits Between the Two Plans (in the Absence of Medicare)**

26. The terms of the NorthWestern Plan provide that it is secondary to a plan that covers the Claimant as a retiree. In particular, the SPD provides at page 76 as follows: "The plan that covers the person as other than a dependent, (e.g., as an employee, member, subscriber, retiree) is primary and the plan that covers the person as a dependent is secondary." (Ex. A.)

27. The terms of the AlaskaCare Plan provide that it is primary to a plan that covers the Claimant as a dependent. In particular, Section 14.1.2(c) of the AlaskaCare Retiree Health Plan Retiree Insurance Information Booklet dated January 2021 provides as follows: "The plan covering the retiree directly, rather than as a dependent, is the primary plan." A true and accurate copy of this Booklet, downloaded from the AlaskaCare website on July 7, 2021, is attached as Exhibit B.

28. Thus, both plans agree that, in the absence of Medicare, the AlaskaCare Plan should pay primary to the NorthWestern Plan because the Claimant is covered under the NorthWestern Plan as a dependent and under the AlaskaCare Plan as a retiree.

29. Here, neither plan is arguing that Medicare is primary to both of them in this circumstance, and thus Medicare's liability to pay Claimant's medical expenses is not at issue in this case.

30. Accordingly, the AlaskaCare Plan should pay primary to the NorthWestern Plan under the plain terms of their respective coordination of benefits provisions.

### Factoring in Medicare

31. The terms of the NorthWestern Plan provide that it is primary to Medicare. (*See* Ex. A., page 78.)

32. The terms of the AlaskaCare Plan provide that it is secondary to Medicare. (*See* Ex. B, Section 14.1.2(a).)

33. Although both plans agree that the AlaskaCare Plan should be primary to the NorthWestern Plan, the AlaskaCare Plan cannot be both primary to the NorthWestern Plan and secondary to Medicare (because the federal Medicare Secondary Payer rules require the NorthWestern Plan to be primary to Medicare).

34. To the extent Medicare is relevant at all (given that no one is arguing it is primary to both plans), this apparent conflict should be resolved both by operation of the federal Medicare Secondary Payer rules and by operation of the federal common law of ERISA.

35. Under the federal Medicare Secondary Payer rules, in this scenario, both plans together are primary to Medicare, while the NorthWestern Plan remains secondary to the AlaskaCare Plan.

36. The federal Medicare Secondary Payer rules apply to both the NorthWestern Plan and the AlaskaCare Plan and proscribe if and when such plans are permitted to pay secondary to Medicare.

37. Under the federal Medicare Secondary Payer rules the NorthWestern Plan is not permitted to pay secondary to Medicare because the Claimant's coverage is due to his spouse's current employment status.

7

38.     Under the federal Medicare Secondary Payer rules, if the Claimant had not been covered under multiple plans, AlaskaCare would be permitted to pay secondary to Medicare because the Claimant does not have current employment status.  But the fact is that Claimant is covered under multiple plans, and applying the plans' non-Medicare coordination of benefit rules together with the Medicare Secondary Payer requirements results in a conflict that requires a change in the terms of the AlaskaCare Plan.

39.     In these circumstances, the federal Medicare Secondary Payer rules override the terms of the AlaskaCare Plan to require the AlaskaCare Plan to pay primary to Medicare.

40.     The Medicare Secondary Payer Manual addresses this situation and confirms this conclusion.  In Section 10.9, the Medicare Secondary Payer Manual provides as follows:

> The second scenario is where a plan's payment would normally be secondary to Medicare but, under coordination of benefit provisions, the payment is primary to a primary payer under §1862(b) of the Act, the combined payment of both plans constitutes the primary payment to which Medicare is a secondary payer. In other words, both plans pay first. (See example 1 below.)
>
> EXAMPLE 1: John Jones, age 75, is a Medicare beneficiary with coverage under Part A and Part B. He retired from the Acme Tool Company in 2003 and received retirement health insurance coverage that is secondary to Medicare. His wife, Mary, age 64, has been employed continuously with the local police department since 1977 and since that time has received coverage for herself and her husband under the department's GHP. The priority of payment for John's medical expenses is as follows:
>
> • The GHP of the spouse who has current employment status is primary payer. <u>However, the retirement plan must coordinate benefits with the employed spouse's GHP (*i.e.*, the spouse's GHP will not pay until after the retirement plan pays)</u>. Under these circumstances, the combined benefit of the two plans is primary to Medicare.
>
> • Medicare is secondary payer.
>
> NOTE: If the retirement plan is permitted to pay after the GHP under the private coordination of benefits, the order of payment will be as follows:
>
> •       The GHP will be primary,

8

- Medicare will be secondary, and
- The retirement plan will be tertiary payer.

(Underlining added.)

41. Applying the foregoing example to this case, the Acme "retirement plan" is the AlaskaCare Plan, the "GHP" is the NorthWestern Plan, and John Jones is the Claimant.

42. As in the example above, the AlaskaCare Plan would normally be secondary to Medicare but, under coordination of benefit provisions, is primary to a primary payer (*i.e.*, primary to the NorthWestern Plan). Because the AlaskaCare Plan and the NorthWestern Plan both agree that the AlaskaCare Plan should be primary to the NorthWestern Plan, the AlaskaCare Plan (the Acme "retirement plan" in the example above) must pay primary to the NorthWestern Plan (the local police "GHP" in the example above), and both plans must pay primary to Medicare.

43. If the coordination of benefits provisions of the plans had allowed AlaskaCare to pay secondary to the NorthWestern Plan, the result would be different, per the last clause of the example in paragraph 40 above. In that case, the NorthWestern Plan would have paid primary, Medicare would have paid secondary, and AlaskaCare would have paid tertiary. Here, because both plans agree that AlaskaCare pays primary to the NorthWestern Plan, however, AlaskaCare must be the primary payer.

44. Even setting aside the Medicare Secondary Payer rules, the federal common law of ERISA provides that, to the extent there is a conflict between the coordination of benefits provisions in the NorthWestern Plan and the AlaskaCare Plan, the coordination of benefits provision in the NorthWestern Plan, which is an ERISA-governed plan, would govern over any conflicting language in the coordination of benefits provisions in the AlaskaCare Plan, which is a non-ERISA plan.

9

45.     Thus, the AlaskaCare Plan cannot rely on its own coordination of benefits provision to contradict those of an ERISA plan or the federal Medicare Secondary Payer rules.

46.     Nor can the AlaskaCare Plan rely on insurance industry guidelines or model rules concerning coordination of benefits in the insurance industry because the NorthWestern Plan is self-insured, not fully-insured.  Furthermore, ERISA preempts any state-based rules or laws that might otherwise apply if this were a dispute between two non-ERISA plans, which it is not.

### The Controversy

47.     The NorthWestern Plan and its claims administrator have made several attempts to coordinate the Claimant's overlapping benefits here by explaining why the AlaskaCare Plan should acknowledge primary coverage for the medical expenses incurred by the Claimant.  But the AlaskaCare Plan has refused to accept its primary liability and has refused to engage in any further meaningful dialogue on the matter, thus leaving Claimant's medical bills unpaid for months with no relief in sight.

48.     There is a live controversy between Plaintiff and Defendant regarding which plan is primarily liable to pay the current and future unpaid medical expenses of the Claimant to the extent otherwise covered by both plans.

49.     The resolution of this controversy requires, among other things, sorting out the parties' adverse legal interests by application of the terms of an ERISA plan, the terms of a non-ERISA plan, the federal Medicare Secondary Payer rules, and federal law.

50.     Plaintiff also seeks reimbursement for all of its attorney's fees and costs in having to pursue this lawsuit, pursuant to ERISA's fee-shifting provision, 29 U.S.C. §1132(g)(1).

### Count I
### (Declaratory Judgment)

51. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-50 of this Complaint, as if fully set forth herein.

52. There is a ripe case or controversy between Plaintiff and Defendant regarding which plan has primary liability to pay Claimant's past and future unpaid medical expenses to the extent otherwise covered by both plans.

53. The parties have adverse legal interests in this controversy.

54. The controversy is substantial, affecting numerous unpaid medical services and multiple providers, with the potential for more expenses to occur in the future as long as Claimant remains covered by both plans. The exact amount of incurred and unpaid expenses/services is not known inasmuch as some providers have been asked to hold their bills and claims pending resolution of this dispute, but upon information and belief the bills for incurred and unpaid as well as future claims in the aggregate could exceed $100,000.

55. The situation is of such immediacy and existence so as to warrant a declaratory judgment. The Claimant's medical expenses have gone unpaid for many months and, by all appearances, will continue to remain unpaid unless and until declaratory relief is granted.

56. Plaintiff requests this Court to declare that (i) the NorthWestern Plan's coordination of benefits provisions must be given priority over the AlaskaCare Plan's and must be fully enforced against the AlaskaCare Plan; (ii) that, by operation of the parties' respective coordination of benefits provisions, the federal Medicare Secondary Payer rules, and federal law, the NorthWestern Plan's obligation to pay Claimant's unpaid, overlapping past and future medical expenses is secondary to Defendant's obligation to pay such expenses; and (iii) that the Defendant must pay such expenses primary to Plaintiff.

57. Defendant should also be ordered to reimburse Plaintiff's attorneys' fees expended to obtain such declaratory relief, pursuant to 29 U.S.C. §1132(g)(1).

## Count II
## (Equitable Relief under ERISA, 29 U.S.C. §1132(a)(3))

58. Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-57 of this Complaint, as if fully set forth herein.

59. Under 29 U.S.C. §1132(a)(3), Plaintiff may bring a civil action to enjoin any act or practice which violates the terms of the NorthWestern Plan. Plaintiff may further obtain other equitable relief to redress such violations or enforce the terms of the NorthWestern Plan and ERISA.

60. The terms of the NorthWestern Plan designate the AlaskaCare Plan as the primary plan responsible for the Claimant's overlapping covered medical expenses and designate the NorthWestern Plan as the plan with secondary responsibility.

61. In order to enforce the terms of an ERISA-regulated welfare benefit plan, the NorthWestern Plan seeks an order of equitable relief (i) finding that the coordination of benefits provisions of the NorthWestern Plan are to be given priority over the AlaskaCare Plan's coordination of benefits provisions, with or without application of the federal Medicare Secondary Payer rules, and (ii) requiring Defendant to assume primary responsibility for the Claimant's covered medical expenses to the extent otherwise covered by both plans.

62. Defendant should also be ordered to reimburse Plaintiff's attorneys' fees expended to obtain such equitable relief, pursuant to 29 U.S.C. §1132(g)(1).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court:

a. Declare (i) that the NorthWestern Plan's coordination of benefits provisions must be given priority and must be fully enforced against the Defendant; (ii) that by operation of the parties' respective coordination of benefits provisions, the federal Medicare Secondary Payer rules, and federal common law, the NorthWestern Plan's obligation to pay Claimant's unpaid overlapping past and future medical expenses is secondary to Defendant's obligation to pay such expenses; and (iii) that the Defendant, as the primary payer, must pay such expenses primary to Plaintiff;

b. Enter an order of equitable relief to enjoin Defendant from denying primary coverage and to enforce the terms of the NorthWestern Plan including its coordination of benefits provisions;

c. Retain jurisdiction to enforce the declaratory judgment and other equitable remedies sought herein by Plaintiff, for such period of time as is required, until Defendant pays the Claimant's past and future medical expenses to the extent otherwise covered by both plans;

d. Enter any further orders which are reasonable and just to effectuate the terms of the NorthWestern Plan and the remedies requested herein;

e. Grant such other relief as the Court deems just and proper; and

f. Award costs and reasonable attorneys' fees and expenses in favor of Plaintiff under 29 U.S.C. §1132(g)(1) and other applicable law.

Dated: July 12, 2021

Respectfully submitted,

/s/ Eric C. Schulte
Eric C. Schulte
**DAVENPORT EVANS, HURWITZ & SMITH, LLP**
206 West 14th Street
P.O. Box 1030
Sioux Falls, SD  57101
Telephone:  (605) 336-2880
Facsimile:  (605) 335-3639
eschulte@dehs.com

Brian J. Lamb*
**THOMPSON HINE LLP**
3900 Key Center
127 Public Square
Cleveland, OH  44114
Telephone: (216) 566-5500
Facsimile:  (216) 566-5800
Brian.Lamb@ThompsonHine.com

Melanie M. Lazor*
**THOMPSON HINE LLP**
312 Walnut Street
Suite 2000
Cincinnati, OH  43215
Telephone:  (513) 352-6700
Facsimile:  (513) 241-4771
Melanie.Lazor@ThompsonHine.com

*Attorneys for Plaintiff the Employee Benefits Administration Committee for and on behalf of the NorthWestern Energy Flexible Compensation Plan and its Component Plan the Health Benefit Plan for All Active Employees of NorthWestern Corporation dba NorthWestern Energy*

**Pro hac vice* application forthcoming

4836-6695-6525

JS 44 (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
The Employee Benefits Administration Committee for and on Behalf of the Northwestern Energy Flexible Compensation Plan, et al.

**(b)** County of Residence of First Listed Plaintiff: Minnehaha
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Eric C. Schulte, Davenport, Evans, Hurwitz, & Smith, LLP, P.O. Box 1030, Sioux Falls, SD 57101-1030; 605-336-2880

## DEFENDANTS
AlaskaCare Retiree Health Plan

County of Residence of First Listed Defendant: Juneau, AK
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*
- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | ☒ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
ERISA, 29 USC 1001, et seq.

Brief description of cause:
This matter is a coordination of benefits suit under ERISA. Plaintiff seeks a declaratory judgment.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE 7/12/21     SIGNATURE OF ATTORNEY OF RECORD  /s/ Eric Schulte

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

JS 44 Reverse (Rev. 02/19)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.
  **(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)
  **(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket. **PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.